```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RANDOLPH WRIGHT a/k/a ASHLEY WRIGHT,    :
                                        :
                        Plaintiff,      :   18cv10769 (DLC)
            -v-                         :
                                        :   OPINION AND ORDER
THE CITY OF NEW YORK, a municipal       :
entity, ACACIA NETWORK HOUSING, INC.,   :
SERA SECURITY SERVICES LLC, DIAMOND     :
PITMAN, an employee and/or agent of     :
the New York City Department of         :
Homeless Services and/or Acacia         :
Network Housing, Inc., "JOHN DOES"      :
(one of whom is "Ralph" and whose last  :
name is unknown) and "SALLY ROES",      :
employees and/or agents of the New      :
York City Department of Homeless        :
Services and/or Acacia Network          :
Housing, Inc., LILLY ROSARIO, an        :
employee and/or agent of the New York   :
City Department of Homeless Services    :
and/or Sera Security Services LLC,      :
KADIJA STILL, an employee and/or agent  :
of the New York City Department of      :
Homeless Services and/or Acacia         :
Network Housing, Inc., "JOE" RODNEY,    :
an employee and/or agent of the New     :
York City Department of Homeless        :
Services and/or Acacia Network          :
Housing, Inc., RAFAEL RODNEY, a former  :
employee and/or agent of the New York   :
City Department of Homeless Services    :
and/or Acacia Network Housing, Inc.,    :
OFFICER BALDWIN, an employee and/or     :
agent of the New York City Department   :
of Homeless Services and/or Acacia      :
Network Housing, Inc., OFFICER          :
CYRIAQUE, an employee and/or agent of   :
the New York City Department of         :
Homeless Services and/or Acacia         :
Network Housing, Inc., CAPTAIN ADAMS    :
(formerly Lieutenant), an employee      :
and/or agent of the New York City       :
Department of Homeless Services and/or  :
```

```
Acacia Network Housing Inc., and/or    :
Sera Security Services LLC, each of    :
the foregoing in his/her individual    :
and in his/her official capacities,    :
                                       :
Defendants.                            :
---------------------------------------X
```

APPEARANCES

For the Plaintiff:
James Meyerson
510 Fifth Avenue, 3rd Floor #335
New York, New York 10036

For the City Defendants:
Zachary W. Carter
Corporation Counsel of the City of New York
Matthew McQueen, Of Counsel
100 Church Street
New York, New York 10007

DENISE COTE, District Judge:

Defendants City of New York (the "City") and New York Department of Homeless Services Police Officers Cyriaque ("Cyriaque") and Baldwin ("Baldwin") and Captain (formerly Lieutenant) Adams ("Adams") (collectively with the City, the "City Defendants") have moved to dismiss each of the claims asserted against them in the Second Amended Complaint ("SAC") in this action. That motion is granted.

## **Background**

The following facts are alleged in the SAC and are assumed to be true for the purpose of addressing this motion.[1] Plaintiff

---

[1] The City Defendants have attached a number of documents to their April 2 motion to dismiss the SAC. Each of those documents is

Randolph Wright a/k/a Ashley Wright ("Wright") is a transgender woman. From June 2017 through December 1, 2017, Wright resided in the Pam's Place Women's Shelter ("Pam's Place"). Pam's Place is managed by defendant Acacia Network Housing, Inc. ("Acacia"), a non-profit corporation which manages properties used by the City's Department of Homeless Services to provide housing to homeless individuals. Security at Pam's Place is provided by Sera Security Services LLC ("Sera Security"), a private company.

During her residence at Pam's Place, Wright filed six written complaints with on-site management about the treatment she was receiving there. None of these complaints, Wright alleges, were taken seriously and nothing was done to address the situation. Wright also alleges that Pam's Place staff made "rude and disparaging comments" about her because she is a transgender woman.

Wright alleges that on December 1, 2017 at around 2:00 a.m. Pam's Place employee Pitman, "at the direction and/or with the knowledge of" another Pam's Place employee,[2] entered Wright's room without knocking, accompanied by another Pam's Place staff

---

judicially noticeable, incorporated by reference in the SAC, or integral thereto.

[2] Although not clear on the face of the SAC, documents submitted by the City Defendants in connection with their motion to dismiss appear to indicate that this employee was a staff supervisor at Pam's Place.

3

member and a Sera Security officer while Wright was sleeping and in a state of undress. When Wright verbally protested, Pitman allegedly struck her with a walkie talkie and "otherwise physically abused" her. It was after this encounter that the Department of Homeless Services Police were called.

Officers Baldwin and Cyriaque arrived on the scene. Wright alleges that she was then "dragged" out of the room into the hallway, where she was "further verbally and physically abused" before she was permitted to return to her room to dress. The SAC does not identify who dragged Wright from her room, or the actions that she contends constituted physical abuse in the hallway.

After dressing, Wright was handcuffed, arrested, and brought by Officers Baldwin and Cyriaque, with the authorization and approval of then-Lieutenant Adams, to the New York City Police Department's 114th Precinct. At the precinct, she was charged with assault and harassment and received a Desk Appearance Ticket directing her to appear at the Queens County Criminal Court on December 22, 2017. The NYPD Complaint identified the victim of the assault as Pitman, and stated: "VICTIM STATED THAT DEF RANDOLPH WHIGHT [sic] HIT HER WITH A CLOSED FIST ON THE LEFTSIDE OF HER CHEEK AND NOSE, CAUSEING [sic] HER PAIN. BECAUSE VICTIM TOLD DEFT TO STOPPOINTING FIGER [sic] IN HER FACE."

4

Upon her release from police custody, Wright went to the Emergency Department at Mount Sinai Hospital of Queens for treatment of the injuries Pitman allegedly inflicted on her. She was examined and "directed" to "stay in bed for three days." At the time of these events, Wright was suffering from a pre-existing herniated disc, for which she received Social Security Disability benefits in 2006. She alleges that her assault aggravated this injury.

On April 25, 2018, the charges were adjourned in contemplation of dismissal. Wright filed a Notice of Claim pursuant to New York General Municipal Law §§ 50-e and 50-i(1) with the City on May 17, 2018. The City conducted a hearing pursuant to New York General Municipal Law § 50-h on July 26, 2018.

Wright commenced this action on November 18, 2018. She filed a First Amended Complaint ("FAC") on January 16, 2019. On February 28, the City Defendants filed a motion to dismiss the Section 1983 municipal liability claims and the state law claims asserted against the City Defendants in the FAC. An initial pretrial conference was held on March 1. On March 6, Wright filed a Second Amended Complaint ("SAC"), which added Sera Security, Captain Adams, and Rafael Rodney (named in the FAC as "Joe" Rodney) as defendants. On April 2, the City Defendants filed a motion to dismiss the claims asserted against them in

5

the SAC that were not addressed by the February 28 motion. That motion became fully submitted on April 26.[3]

**Discussion**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation omitted). A claim to relief is plausible when the factual allegations in a complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Progressive Credit Union v. City of New York, 889 F.3d 40, 48 (2d Cir. 2018) (citation omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017). The plaintiff must plead enough facts to "nudge[] [his] claims across the line from conceivable to plausible . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R.

---

[3] The City Defendants' February 28 motion to dismiss the FAC was briefed separately and became fully submitted on April 8. Because the SAC did not make any substantive changes to the FAC, the parties have agreed that arguments made in the briefing of the February 28 motion apply equally to the SAC.

6

Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted). "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) (citation omitted). A court may also consider documents that are "integral to the complaint." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect." Id. A court may consider "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit . . . ." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000). A court may also take judicial notice of "relevant matters of public record." Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012).

I. State Law Claims against the City Defendants

The SAC asserts claims against Baldwin, Cyriaque, and Adams for unlawful entry and false arrest, malicious abuse of criminal process, and excessive force, as well as negligence and respondeat superior claims against the City of New York. Wright's state law claims against the City Defendants must be

7

dismissed for failure to file a Notice of Claim within ninety days after the claim arises as required by New York General Municipal Law §§ 50-e and 50-i(1). The events that form the basis of Wright's claims took place on December 1, 2017. She did not file a Notice of Claim with the City until May 17, 2018, more than five months later. Wright concedes that she did not file a timely Notice of Claim with respect to her state law claims against the City Defendants for unlawful entry, false arrest, and excessive force. These claims must therefore be dismissed.

Wright's argument that the City has waived this timeliness defense by accepting the Notice of Claim and holding a hearing pursuant to New York General Municipal Law § 50-h is incorrect. She has cited no law to support this contention, and the weight of authority among courts applying New York law holds that conducting a 50-h hearing does not waive the timeliness defense. See, e.g., Rao v. Bellevue Hospital, 08cv1922(DAB), 2008 WL 11404789, at *2 (S.D.N.Y. Dec. 4, 2008); Hallett v. City of Ithaca, 8 A.D.3d 870, 871 (3d Dep't 2004); Rodriguez v. City of New York, 169 A.D.2d 532, 533 (1st Dep't 1991); cf. Hamptons Hospital & Medical Center, Inc. v. Moore, 52 N.Y.2d 88, 93 (1981) ("The doctrine of estoppel is not applicable to the State acting in a governmental capacity.").

Wright argues that her state law claims for abuse of process and violation of her right to "fair administration of criminal justice trial and process"[4] accrued at the conclusion of her prosecution and her Notice of Claim was therefore timely with respect to those claims.  Not so.  A claim for abuse of process accrues at such time as the criminal process is set in motion, unless the plaintiff is unaware of facts supporting the claim.  Cunningham v. State of New York, 53 N.Y.2d 851, 853 (1981) ("It is clear . . . that the accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor . . . ."); see also Galgano v. Cty. of Putnam, 16cv3572(KMK), 2018 WL 4757968, at *32 (S.D.N.Y. Sept. 28, 2018).  The facts alleged in the SAC indicate that Wright knew or had reason to know of the alleged violations that form the basis of her state law abuse of process and fair trial claims -- namely, the fabrication of a claim of assault -- as of the date of her arrest.  Because she did not file a Notice of Claim within ninety days of that date, those claims must also be dismissed.

---

[4] This latter claim is asserted only against Adams, among the City Defendants.  Wright does not make a separate argument that this claim accrued at a different time than her abuse of process claim, but rather appears to address these claims interchangeably.

Wright similarly argues that her state law negligence and respondeat superior claims against the City must survive because they "inter-relate and are associated with matters deriving from" her abuse of process claim. Because, for the reasons just described, her Notice of Claim was not timely filed, these claims against the City must also be dismissed.

Wright correctly notes that filing a Notice of Claim is not a prerequisite for maintaining a discrimination claim against a municipality since it is not a tort claim for purposes of General Municipal Law § 50. See Margerum v. City of Buffalo, 24 N.Y.3d 721, 730 (2015). This argument is puzzling because Wright does not assert such a claim against any of the City Defendants.

In her opposition to this motion to dismiss, Wright asserts that the motion should be denied with respect to her "pendent State law Fourth, Sixth, and Fifteenth New York City Human Rights Law Causes of Action." Count Four of the SAC, which asserts a discrimination claim under the New York City Human Rights law, names only defendants Pitman, Rosario, Still, and Rodney. Count Six, which asserts a claim of retaliation under "the laws and Constitution of the State of New York," similarly lists only those four defendants.[5] Count Fifteen generally

---

[5] Nor is it clear from Wright's opposition to this motion that her respondeat superior cause of action is meant to cover the

10

asserts against the City, Acacia, and Sera Security "State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York . . . pursuant to the doctrine of respondeat superior." To the extent that Wright seeks to hold the City liable for the allegedly discriminatory actions of the four individuals named in Counts Four and Six under a respondeat superior theory, that claim is not clearly pleaded and is dismissed. The SAC does not give any detail as to the alleged basis for the City's respondeat superior liability, nor does it allege any facts to support an inference that Pitman, Rosario, Still, or Rodney were employees of the City. Rather, the facts alleged in the SAC indicate that Rosario was an employee of Sera Security and Pitman, Still, and Rodney were employees of Acacia.

II. Section 1983 Claims Against the City Defendants[6]

In her opposition to the City Defendants' motion to dismiss, Wright has indicated that the only federal claim she is

---

discrimination claims asserted in Counts Four and Six. The section of the opposition brief that addresses respondeat superior liability mentions only her malicious abuse of process claim, as described above.

[6] Wright argues that Officers Baldwin and Cyriaque have waived their right to move to dismiss the Section 1983 claims asserted against them in the SAC because their previous motion to dismiss the state law claims in the FAC did not address these issues. Wright has not cited any legal support for this argument, and it is unavailing. "[A]n amended complaint ordinarily renders the original complaint of no legal effect. It is as though the
11

pursuing against defendant Adams is a false arrest claim pursuing pursuant to Section 1983. The only federal claims she is pursuing against Baldwin and Cyriaque are claims for false arrest and excessive force pursuant to Section 1983. She has not opposed the City Defendants' motion to dismiss her remaining federal claims against them and those claims are therefore dismissed.

In assessing Fourth Amendment claims of false arrest brought under Section 1983, courts look to the law of the state in which the arrest occurred. Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007). A false arrest claim under New York law requires a plaintiff to prove "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from

---

original complaint was never served." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 260 (2d Cir. 2002); see also Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

12

liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015). An officer "has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (citation omitted). "Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (citation omitted).

"A law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." Fabrikant v. French, 691 F.3d 193, 216 (2d Cir. 2012) (citation omitted). There is no duty imposed on an arresting officer "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). "Probable cause does not necessarily disappear simply because an innocent explanation may be consistent with facts that an officer views as suspicious." Figueroa v. Mazza, 825 F.3d 89, 102 (2d Cir. 2016) (citation omitted).

13

Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is "objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation." Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (citation omitted). This objective inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). Courts must consider the following factors when conducting this balancing inquiry:

> (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.

Id. This balancing, however, requires the Court to "evaluate the record from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

Wright's claim for false arrest fails because the facts alleged in the SAC, along with documents properly considered on this motion, show that there was probable cause for her arrest. Officers Baldwin and Cyriaque appeared on the scene in response to a radio call alerting them that Wright had struck or assaulted Pitman. The arrest was made in the presence of

14

Pitman, the complaining witness and putative victim. Wright argues that she has nonetheless stated a claim for false arrest because the SAC does not indicate that the Officers performed any investigation of Pitman's complaint, such as by interviewing Wright or her roommate at Pam's Place. This argument is unavailing. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997). Accordingly, Wright's Section 1983 false arrest claim against Baldwin, Cyriaque, and Adams must be dismissed.

The SAC asserts that Pitman struck Wright with a walkie talkie in her room. In contrast, her excessive force claim against the City Defendants is vague in the extreme. The sole allegation that Wright has pleaded in the SAC to support her excessive force claim against Baldwin and Cyriaque is that, after they arrived at the scene, she "was dragged out of the room into the hallway where she was further verbally and physically abused." The SAC does not identify who "dragged" Wright from the room, that Officers Baldwin and Cyriaque were in a position to affect how Wright was removed from her room, or how she was physically abused in the hallway. Without any further factual detail or support, this conclusory allegation is

15

insufficient to state an excessive force claim against Baldwin or Cyriaque. Despite having two opportunities to amend her complaint, Wright has failed to allege any details as to what force was used by these defendants or how, if at all, Wright was injured as a result of that force. Her excessive force claim against Baldwin and Cyriaque is dismissed.

III. Cross-Claims

Defendants Sera Security and Rosario have cross-claimed against the City Defendants for indemnification and contribution. In their memorandum of law in support of their motion to dismiss the SAC, the City Defendants argue that the cross-claims should be dismissed for the same reasons discussed above. Southern District of New York Local Rule 7.1(a)(1) requires all motions to contain a notice of motion which "shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion." The City Defendants' Notice of Motion does not mention the cross-claims, and the cross-claimants have not submitted any briefing in opposition to the City Defendants' arguments. The cross-claims cannot be dismissed at this juncture.

IV. Section 1983 Municipal Liability

Wright appears to premise her Section 1983 claim against the City upon the existence of a "policy or custom" of failing to screen employees for bias against transgender individuals or

to train them to address such biases. Municipalities cannot be held liable under Section 1983 unless the plaintiff can prove that the unconstitutional action was taken pursuant to

> a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (citation omitted). "[I]solated acts by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy or usage that would justify liability." Matusick v. Erie County Water Authority, 757 F.3d 31, 62 (2d Cir. 2014) (citation omitted). Municipal liability thus requires a showing "(1) that the [City's] failure to train its employees amounted to deliberate indifference to constitutional rights; (2) that there was a persistent and widespread unconstitutional governmental policy or custom; or (3) that a [City] policymaker approved any constitutional violation." Carter v. Incorporated Village of Ocean Beach, 759 F.3d 159, 164 (2d Cir. 2014) (citation omitted). An "official policy or custom" may be established through the official acts of city lawmakers or "those whose edicts or acts may fairly be said to represent official policy," Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978), or by a pattern of misconduct that is "sufficiently persistent or widespread as to

acquire the force of law." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2d Cir. 2011). In order to provide a basis for municipal liability, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. (citation omitted). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (citation omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (citation omitted). This is because "the nuance of a particular training need may only become apparent to the municipal policymakers after a pattern of violations arises in substantially similar circumstances." Cash v. County of Erie, 654 F.3d 324, 336 (2d Cir. 2011) (citation omitted).

Wright has failed to state a claim for municipal liability under Section 1983 against the City. Wright has made no attempt to plead any factual support for her bare legal conclusions. The SAC contains little more than "labels and conclusions or a

18

formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, Wright has failed to allege a pattern of similar violations as ordinarily required to support a failure to train claim. Indeed, she has not pointed to a single example beyond her own experience with the City Defendants on December 1, 2017 described in the SAC. Wright's Section 1983 claims against the City are dismissed.

### Conclusion

The City Defendants' February 28 and April 2 motions to dismiss the SAC are granted. The cross claims asserted against the City Defendants by Sera Security and Rosario survive.

Dated:   New York, New York
         July 2, 2019

```
                                    _____
                                          DENISE COTE
                                    United States District Judge
```